# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DINA SOLIMAN,** | |
| **Plaintiff,** | |
| *v.* | **Case No. 1:08-CV-01137 RJL** |
| **GEORGE WASHINGTON UNIVERSITY, et al.** | |
| **Defendants.** | |

## MOTION OF DEFENDANTS MEDICAL FACULTY ASSOCIATES, DR. BERRIGAN, DR. DANGERFIELD, DR. SANKAR AND DR. GURITZKY TO DISMISS AND TO COMPEL ARBITRATION

Defendants Medical Faculty Associates, Inc. ("MFA"), Michael Berrigan, M.D., Paul Dangerfield, M.D., Jason Sankar, M.D. and Ronald Guritzky, M.D. hereby move that the Complaint in this action be dismissed with regard to them pursuant to Fed. R. Civ. P. 12(b)(1). This motion is based on the agreement to resolve all issues regarding plaintiff's employment through binding arbitration contained in Plaintiff's employment agreement with MFA.

The individually-named defendants are employees of MFA and it is alleged that they were acting in their capacities as employees of MFA with regard to the actions about which plaintiff complains.

As detailed in the accompanying Memorandum of Law, it is appropriate to resolve all issues related to MFA and its employees in arbitration. One may not sidestep the arbitration agreement by naming other employees as defendants.

Respectfully Submitted,

  /s/ Frank C. Morris, Jr. _____
Frank C. Morris, Jr. (#211482)

  /s/ Kathleen M. Williams _____
Kathleen M. Williams (#334888)
Of Counsel

EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW
Suite 700
Washington, D.C. 20037-1156
(202) 861-1880   Telephone
(202) 296-2882   Facsimile

Counsel for Defendants
Medical Faculty Associates, Dr.
Berrigan, Dr. Dangerfield, Dr. Sankar
And Dr. Guritzky

August 8, 2008

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the Motion of Defendants Medical Faculty Associates, Dr. Berrigan, Dr. Dangerfield, Dr. Sankar and Dr. Guritzky to Dismiss and to Compel Arbitration along with its Memorandum in Support and Proposed Order were served on the 8th day of August, 2008 via electronic delivery upon the following:

Lynn Bernabei, Esq.
David Wachtel, Esq.
Emily Read, Esq.
Bernabei & Wachtel, PLLC
1775 T Street
Washington, D.C. 20009

Henry Morris, Esq.
Arent Fox, LLP
1050 Connecticut Ave. N.W.
Washington, D.C. 20036-5339

Andrew S. Block, Esq.
Andrew J. Marcus, Esq.
1233 Twentieth Street, N.W.
Suite 800
Washington, D.C. 20036

    /s/ Kathleen M.Williams
Kathleen M. Williams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DINA SOLIMAN,

              **Plaintiff,**

    *v.*

GEORGE WASHINGTON UNIVERSITY, et al.

              **Defendants.**

**Case No. 1:08-CV-01137 RJL**

## MEMORANDUM IN SUPPORT OF
## MOTION OF DEFENDANTS MEDICAL FACULTY ASSOCIATES, DR. BERRIGAN, DR. DANGERFIELD, DR. SANKAR AND DR. GURITZKY TO DISMISS AND TO COMPEL ARBITRATION

Pursuant to Fed. R. Civ. P. 12(b), Rule 7 of the Local Rules of this Court, and section 4 of the Federal Arbitration Act, Defendants Medical Faculty Associates, Inc. ("MFA"), Michael Berrigan, M.D., Paul Dangerfield, M.D., Jason Sankar, M.D., and Ronald Guritzky, M.D. (hereinafter, collectively referred to as "MFA Physician Defendants"), through counsel, submit the following Memorandum of Law in support of their Motion to Dismiss and to Compel Arbitration.[1]

MFA and the MFA Physician Defendants move to dismiss the Complaint based on Plaintiff's employment agreement, in which she commits to resolving "all claims arising under" her employment agreement through binding arbitration. This agreement unquestionably encompasses Plaintiff's claims against MFA and MFA Physician Defendants.

---

[1] MFA and the MFA Physician Defendants expressly reserve their rights to move to dismiss the Complaint on other jurisdictional and substantive grounds. Specifically, MFA and the MFA Physician Defendants submit, among other things, that the claims against them are barred due to Plaintiff's failure to exhaust administrative remedies, because they are untimely, because no administrative charge was ever served on MFA or the MFA Physician Defendants and because, in taking certain actions, defendants are immune from liability.

## I.    *Factual Background*

Defendant MFA is a non-profit, tax exempt faculty practice plan, s*ee*

Paragraph 2 of Declaration of Alan G. Wasserman, M.D., attached hereto as Exhibit 1,

which employs physicians who provide academic, medical and clinical teaching

services.  MFA employed Dr. Soliman to perform these services from July 2000 to the

date of her resignation in January 2007, [2]  Wasserman Decl. ¶3, pursuant to a written

contract in the form of a Physician Agreement.  (Wasserman Decl. ¶ 4;  *see also*

Physician Agreement, Wasserman Decl. Ex. A.)  The initial Physician Agreement was

for a one-year term, and it was renewed annually thereafter and remained in effect until

Dr. Soliman's resignation on January 26,  2007. (Wasserman Decl. ¶5.)

Among other duties and responsibilities in the Physician Agreement,

Plaintiff agreed to arbitrate all claims arising out of her employment.  Specifically,

Section XI of the Physician Agreement provides as follows:

> This Agreement shall be construed in accordance with the
> laws of the District of Columbia, without regard to any
> conflict of laws provisions thereof.  The parties agree that all
> claims arising under this Agreement shall be resolved
> through binding arbitration in accordance with the American
> Health Lawyers Alternative Dispute Resolution Procedures.
> Each party shall bear its own costs of arbitration.

Plaintiff's Physician Agreement with MFA further required that she

comply with applicable medical staff privileges and comply with MFA and

applicable Medical Staff bylaws, rules and regulations. (Wasserman Decl. Ex. A).

Each of the MFA Physician Defendants is party to a similar Physician

Agreement with MFA, (Wasserman Decl. ¶ 8), each is an MFA employee and, based on

---

[2] MFA was formed in 2000, and Plaintiff signed an employment agreement and became an employee of MFA in July 2000.  Prior to that time, she was an employee of the University.

the allegations in the Complaint, each was acting within the scope of his employment

with regard to all matters alleged in the Complaint.  MFA is defending each MFA

Physician Defendant in this matter.  (Wasserman Decl. ¶ 9.)

## II.  ARGUMENT

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* (2008)*,* creates

a strong presumption favoring arbitration clauses contained in employment agreements.

*See Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 219 (1985);  *Circuit City Stores v.*

*Adams,*  532 U.S. 105, 119 (2001); *Gilmer v. Interstate Johnson Lane Corp.,* 500 U.S.

20, 26(1991)(holding that employment discrimination claims were subject to binding

arbitration agreement signed by plaintiff/employee); *Cole v. Burns Int'l Sec. Serv.,* 105

F.3d 1465, 1482-83 (D.C. Cir. 1997)(relying on *Gilmer*  to enforce an arbitration

agreement in Title VII lawsuit); *Martin v. Citibank, Inc.*, 2008 WL 2492068 (D.D.C. June

24, 2008)*; Hughes v. CACI, Inc.,* 384 F. Supp. 2d 89, 95 (D.D.C. 2005). The FAA

provides that "a written provision in … a contract to settle by arbitration a controversy

thereafter arising out of such contract…shall be valid, irrevocable, and enforceable save

upon any grounds as exist at law or in equity for revocation of any contract."  9 U.S.C. §

2.   Doubts regarding the scope of an arbitration agreement must be resolved in favor

of arbitration.  *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27

(1987)(arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).*

Because arbitration is a matter of contract law, "a party cannot be required

to submit to arbitration any dispute which he has not agreed to so submit."  *AT&T Tech.*

*v. Commc'n Workers of Am.,*  475 U.S. 643, 648 (1986). Thus, whether or not a dispute

must be arbitrated is a matter of agreement between the parties. *See EEOC v. Waffle House, Inc.* 534 U.S. 279, 294 (2002). Where there is such an agreement, as in this case, the FAA authorizes a federal district court to issue an order compelling arbitration where a party to an arbitration agreement fails or refuses to comply with the Agreement. 9 U.S.C. § 4. Moreover, when all the claims against a party are arbitrable, as in this case with regard to the MFA and the MFA Physician Defendants, dismissal is a proper remedy. *See Brown v. Dorsey & Whitney, LLP,* 267 F. Supp. 2d 61, 83 n.13 (D.D.C. 2003); *see generally Martin*, 2008 WL 2492068, at *2.

In deciding whether to compel arbitration, a Court should determine: (1) whether the parties entered into a valid and enforceable arbitration agreement; and (2) whether the agreement encompasses the claims raised in the Complaint. *Nat'l Railroad Passenger Corp. v. Boston & Maine Corp.,* 850 F.2d 756, 760-61 (D.C. Cir. 1988); *Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Sys., Inc.,* 448 F. Supp. 2d 64, 68 (D.D.C. 2006); *Nur v. K.F.C. USA, Inc.,* 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001).

### A.      MFA and Plaintiff Entered into a Valid and Enforceable Arbitration Agreement.

There is no question that the first prong of the above test is met with regard to Defendant MFA. MFA and Plaintiff clearly entered into a valid and enforceable arbitration agreement, in the form of Section XI to the July 2000 Physician Agreement. This Agreement bears Plaintiff's signature, and she, thus, agreed to be bound by the arbitration provision contained in the Agreement. *Emeronye v. CACI Int'l, Inc.,* 141 F. Supp. 2d 82, 86 (D.D.C. 2001).

**B.    The Contract Signed by Plaintiff Encompasses the Claims Raised in the Complaint With Regard to MFA and MFA Physician Defendants.**

By signing the Physician Agreement, Plaintiff committed to arbitrate all claims arising under that agreement.  A review of the Agreement, as detailed above, shows that it covered all aspects of Plaintiff's employment with the MFA.

The Supreme Court has held that similar language, "arising out of or related to," the underlying contractual agreement should be given its fair meaning and should be interpreted broadly.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 624 n.13 (1985).  *See also, Tio v. Washington Hosp. Ctr.*, No. 04-0701 (RMU), 2004 U.S. Dist. LEXIS 23503 (D.D.C. Nov. 5, 2004); *Wolff v. Westwood Mgmt. LLC*, 503 F. Supp. 2d 274, 282 (D.D.C. 2007)(citing *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union,* 903 F.2d 924, 927 (2d Cir. 1990)).  Indeed the Supreme Court has indicated that broad arbitration clauses encompass all matters that "touch" upon the contract.  *See Wolff*, 503 F. Supp. 2d at 282 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 624 n.13); *Pan Am. World Airways, Inc. v. C.A.B.,* 683 F.2d 554 (D.C. Cir. 1982)(noting that "[i]n private contract disputes, arbitration is required of any controverted claim that can reasonably be said to fall within the scope of the arbitration clause)*; J.J. Ryan and Sons, Inc. v. Rhone Poulence Textile,* 863 F.2d 315, 321 (4th Cir. 1988).

Courts routinely enforce such broad arbitration provisions to encompass a broad range of employment-related claims similar to those presented in this case.  *See Pearce v. E.F. Hutton Group,* 828 F.2d 826, 832-33 (D.C. Cir. 1987) (enforcing arbitration agreement over defamation claims); *Tio*, 2004 U.S. Dist. LEXIS 23503, at *1 (enforcing arbitration agreement over claims by physician employee and his wife for

tortious breach of contract, tortious interference with contract, denial of common law good faith and fair dealing, tortious interference with third-party physician-patient contracts, defamation, fraud/misrepresentation, antitrust violations and loss of consortium; loss of consortium claim, as wholly derivative and dependent on husband's claim, must also be arbitrated)*; Benefits Commc'n Corp. v. Klieforth,* 642 A.2d 1299, 1304 (D.C. 1994) (D.C. Human Rights Act); *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 319-20 (9th Cir. 1996)(FLSA claims); *McGinnis v. E.F. Hutton & Co.,* 812 F.2d 1011, 1015 (6th Cir. 1987)(wrongful discharge claims).

Plaintiff's agreement to arbitrate clearly also encompasses the claims against the MFA Physician Defendants.  Case law firmly establishes that when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999).

The law is clear that a non-signatory to an agreement to arbitrate can compel a signatory to arbitrate claims brought against the non-signatory, so as not to defeat the purpose of a broad arbitration clause.  There are certain legal theories recognized by the Courts (e.g., equitable estoppel, agency, and third party beneficiary rights) that allow non-signatories to a contract to compel arbitration. *Id.* at 947; *Int'l Paper Co.v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 416-417 (4th Cir. 2000); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995).  The rationale underlying this holding is explained in *MS Dealer* as follows:

> Existing case law demonstrates that equitable estoppel
> allows a nonsignatory to compel arbitration in two different

circumstances.  First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.  When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and estoppel is appropriate.  ***Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.***

177 F.3d at 947 (citations omitted; emphasis added).

In this case, equitable estoppel, agency and third party beneficiary theories are all applicable.

First, inasmuch as the Complaint in this case alleges substantially interdependent and concerted misconduct by MFA and the MFA Physician Defendants, the MFA Physician Defendants are entitled to enforce the arbitration agreement based on *MS Dealer's* second prong.  In this case, even a cursory review of the complaint[3] supports the application of the doctrine of equitable estoppel to compel Plaintiff to arbitrate her claims against the MFA Physician Defendants.  Plaintiff makes allegations against the MFA Physician Defendants that are identical to or otherwise inextricably intertwined with the claims she makes against MFA which arise under her Physician Agreement. To the extent the claims against all entities may be cast in tort rather than contract does not avoid the arbitration clause, *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78, 81-82 (2d Cir. 1983) (defamatory statements), *Sunkist Soft Drinks v. Sunkist Growers, Inc.,* 10 F.3d 753, 756-57 (11th Cir. 1993),  nor may the arbitration

---

[3] One must look to the allegations of the complaint to determine if the claims are intertwined.  *See Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006).

clause be avoided where the statements giving rise to a tort claim are integrally linked to the contractual relation between the parties, *McMahon v. RMS Electronics, Inc.,* 618 F. Supp. 189, 192 (S.D.N.Y. 1985).

In this case, the Complaint alleges that the MFA Physician Defendants acted on behalf of MFA to violate Plaintiff's employment rights.  The alleged acts which form the basis for her claim clearly and unequivocally "arise under" her Physician Agreement, and the acts are alleged to have been committed by the MFA Physician Defendants, in part pursuant to an "aiding and abetting" theory under the DC Human Rights Act.  Plaintiff cannot pursue a claim against MFA – a corporate entity – except by attacking the alleged actions of the MFA Physician Defendants as acting for and on behalf of MFA. Thus, Plaintiff's claims against the MFA Physician Defendants are so intertwined with her claims against MFA that she should be ordered to arbitrate those claims.

The extent to which the claims against the MFA Physician Defendants claims are inextricably intertwined with Plaintiff's claims against MFA is further demonstrated by the fact that the MFA Physician Defendants signed similar employment agreements with MFA.  (*See* Wasserman Decl. ¶ 8.)

Thus, inasmuch as the alleged misconduct by MFA which could only have occurred through alleged actions of its employees, the MFA Physician Defendants, the Complaint alleges substantially interdependent and concerted misconduct by MFA and the MFA Physician Defendants.  The MFA Physician Defendants thus are entitled to enforce the arbitration agreement based on *MS Dealer's* second prong.  177 F.3d at 947.

Likewise, under an agency or third party beneficiary theory, the MFA Physician Defendants may compel arbitration of the claims against them.  It is well established that agents of a signatory to a contract containing an arbitration clause may force a signatory to arbitrate, simply as a policy matter to maintain the integrity of the arbitration agreement.  *Id.*; *Letizia v. Prudential Bache Sec.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986).  The test for agency theory of nonsignatory enforcement is whether the "relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided."  *MS Dealer*, 177 F.3d at 947 (citing *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423 (M.D. Ala. 1997)).  *See Brick v. J.C. Bradford & Co.*, 677 F. Supp. 1251 (D.D.C. 1987)(holding that individual employees of signatory company were entitled to compel arbitration, under agency or third party beneficiary theory,  with regard to claims against employer and employees in their individual capacities).

The Seventh Circuit in *Dunmire v. Schneider,* 481 F.3d 465 (7th Cir. 2007) expressed this concept in third party beneficiary terms, as follows:  "[t]o the extent that there is any doubt about this, courts regularly treat employees as third-party beneficiaries of arbitration clauses such as this," citing *Letizia; Pritzker v. Merrill Lynch, Pearce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3d Cir. 1993) and other authorities.  The *Dunmire* court also cited *Ross v. American Exp. Co.*, 478 F.3d 96 (2d Cir. 2007) for the proposition that "it would be unjust to allow a person who has agreed to arbitrate a dispute to weasel out of that promise by suing related persons or entities, so equitable estoppel blocks such a course."  481 F.3d at 468.

- 12 -

In this case, given that the MFA Physician Defendants were and are employees of MFA, there is no question that they are agents of MFA.  To the extent that Plaintiff alleges they were acting on behalf of MFA or within the scope of their employment with MFA in allegedly treating her in a discriminatory and tortious manner, and to the extent Plaintiff attributes their behavior to MFA, Plaintiff must be compelled to arbitrate those claims in accord with the arbitration clause of her employment agreement, under an equitable estoppel, agency and/or third party beneficiary analysis.

Accordingly, there is no question that Plaintiff's claims against MFA and MFA Physician Defendants are encompassed by the arbitration clause, thus requiring that this matter be arbitrated.

**CONCLUSION**

For the reasons stated, MFA and the MFA Physician Defendants respectfully request that the Court grant their motion to compel arbitration and dismiss the case as to them.

Respectfully Submitted,

 /s/ Frank C. Morris, Jr. _____
Frank C. Morris, Jr. (#211482)

 /s/ Kathleen M. Williams _____
Kathleen M. Williams (#334888)
Of Counsel

EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW
Suite 700
Washington, D.C. 20037-1156
(202) 861-1880   Telephone
(202) 296-2882   Facsimile

Counsel for Defendants
Medical Faculty Associates, Dr.
Berrigan, Dr. Dangerfield, Dr. Sankar
And Dr. Guritzky

August 8, 2008

Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DINA SOLIMAN,

                Plaintiff,

    v.

GEORGE WASHINGTON UNIVERSITY,
et al.

                Defendants.

Case No. 1:08-CV-01137 RJL

## DECLARATION OF ALAN G. WASSERMAN, M.D.

The undersigned, having personal knowledge of the facts herein, being competent to testify, and under penalty of perjury, states as follows:

1. I am the President and Chairman of the Board of Medical Faculty Associates, Inc. ("MFA") and have held that position since MFA was formed in July 2000.

2. MFA is a non-profit, tax exempt faculty practice plan which provides medical care in more than forty specialty areas, as well as academic, medical and clinical teaching services.

3. Dina Soliman, M.D., was employed by MFA from July 2000 until her resignation in January 2007.

4. Dr. Soliman's employment with MFA was pursuant to a Physician Agreement she entered into with MFA effective July 1, 2000. A copy of that Agreement is attached hereto as Exhibit A.

5. Dr. Soliman's Physician Agreement was renewed annually by MFA between 2001 and 2006.

6. As is common among MFA-employed physicians, Dr. Soliman had a faculty appointment with The George Washington University ("the University"), and also had hospital staff privileges at The George Washington University Hospital ("GWU Hospital").

7. Michael Berrigan, M.D., Paul Dangerfield, M.D., Jason Sankar, M.D., and Ronald Guritzky, M.D., are all employed by MFA as Physicians pursuant to individual Physician Agreements.

8. The Physician Agreements MFA entered into with Dr. Soliman, as well as with Dr. Berrigan, Dr. Dangerfield, Dr. Sankar and Dr. Guritzky, detail multiple obligations. Among other things, the Physician Agreements require maintenance of medical staff privileges and compliance with both MFA and applicable Medical Staff bylaws, rules and regulations, and thus fully contemplate that MFA Physicians will maintain hospital privileges and a faculty position. MFA Physicians are also are subject to rules and regulations of the University (pertaining to faculty status) and GWU Hospital (pertaining to staff privileges).

9. MFA is providing for the defense of Dr. Berrigan, Dr. Dangerfield, Dr. Sankar and Dr. Guritzky, in this matter, in which it is alleged that they acted inappropriately in the scope of their employment with MFA.

I declare under penalty of perjury that the foregoing is true and correct.

Alan G. Wasserman, M.D.

- 2 -

# GEORGE WASHINGTON UNIVERSITY
# MEDICAL FACULTY ASSOCIATES

## PHYSICIAN AGREEMENT

I.  Scope and Term of Agreement.

    A.  This is an Agreement between the George Washington University Medical Faculty Associates ("**MFA**") and the individual ("**Physician**") who has signed below.

    B.  The term of this Agreement shall commence on July 1, 2000, and remain in effect for a period of one (1) year, and thereafter shall renew for successive one-year periods, unless terminated earlier in accordance with this Agreement.

    C.  As a condition of employment hereunder, Physician must be: (i) licensed in the appropriate jurisdiction; (ii) have medical staff membership and clinical privileges and be credentialed at institutions necessary to fulfill the Physician's duties hereunder; and (iii) be credentialed by major MFA managed care plans, as such plans are identified by MFA.

    D.  Notwithstanding the foregoing, for Physicians entering into this Agreement to be effective July 1, 2000, this Agreement shall not take effect unless and until such time as the MFA and The George Washington University ("**University**") have executed an effective Affiliation Agreement.

II.  Relationship to Other Documents.  In fulfilling his/her duties hereunder, Physician shall comply with and be subject to the following:

    A.  The provisions of this Agreement, as such may be amended upon mutual agreement of the parties;

    B.  The initial annual draw to be paid to Physician as set forth in Exhibit A;

    C.  The MFA Compensation Plan (the "**Compensation Plan**") attached hereto as Exhibit B, as such Compensation Plan may be amended by MFA in its discretion;

    D.  The MFA Bylaws and the policies, rules and regulations of MFA, as such Bylaws and policies may be developed and/or amended by MFA in its discretion;

    E.  Medical staff bylaws, rules and regulations of the medical staff of any hospital at which the Physician has privileges, as such medical staff bylaws may be amended by the hospital(s) in their discretion;

    F.  The applicable provisions of the University Faculty Code and Faculty Handbook as set forth in the Physician's academic appointment letter and other rules and regulations of the University, as such Code, Handbook, rules and regulations may be amended by the University in its discretion; and

    G.  Applicable local and federal law.

III.   **Physician's Obligations.** Within the scope of the Physician's licensure, expertise and assigned duties, Physician agrees to devote his/her professional best efforts and full-time professional effort to the benefit of MFA, including, without limitation, the devotion of sufficient time and effort to provide teaching, research and administrative services to the University. Included among these obligations are full compliance with the following:

A.   All MFA, University and applicable hospital policies and guidelines, including timely submission of credentialing documentation, including source documentation to the MFA for managed care credentialing;

B.   All federal, state and local regulatory requirements and Medical Center policies, including, but not limited to, requirements concerning rendering services, billing, compliance, supervision of residents, risk management, service excellence, productivity and documentation generally and documentation of services by teaching physicians;

C.   Timely completion of patient clinical records at any ambulatory or inpatient setting at which the Physician provides services and submission of complete and correct billing information to the MFA;

D.   All MFA, University and applicable hospital practice guidelines (including clinical pathways), policies on timely scheduling of all patients and cancellation of patient appointments, correspondence with referring physicians, compliance with MFA utilization targets and strategic planning, and compliance with payor contracts;

E.   Commitment to the best interests of the MFA and the University by fully participating in the resolution of malpractice complaints;

F.   Full commitment to the MFA's patient care and quality improvement programs, including constant efforts to improve patient satisfaction;

H.   Conduct that is consistent with the ethical standards of the MFA and University;

I.   As appropriate to Physician's specialty, maintenance of membership and appropriate clinical privileges at such hospitals as is consistent with Physician's site of service;

J.   Physician's maintenance of a full-time, regular active status faculty appointment from the University; and

K.   Abide by the terms of the Academic Affiliation Agreement between the MFA and University, as agreed to by the MFA.

IV.   **Physician Compensation.**

A.   In return for performing all duties referred to in this Agreement, Physician shall be paid by MFA the initial annual draw set forth in Exhibit A and otherwise in accordance with the MFA Compensation Plan set forth in Exhibit B.

B.   In accordance with MFA policy, Physician may not engage in any regular medical/clinical activity of a remunerative nature outside his/her employment with MFA without the prior written approval of the MFA CEO or President. The only exceptions to this rule are for: (1) management of personal investments; and (2) occasional honoraria approved by the MFA Clinical Director for the MFA Clinical Department or division to which Physician is assigned.

Physician shall report annually to his/her Clinical Director all professional or other relevant activities, whether paid or unpaid, so those issues of conflict of interest can be addressed under applicable policies.

V.    Professional Fees.

A.    Professional fee levels will be recommended by the MFA Clinical Department responsible for the Physician's professional services. However, an effort will be made through established interdepartmental processes to rationalize fee levels across MFA Clinical Departments. MFA will, if necessary, adjust fee levels to ensure that similar procedures performed in a department or in different departments have appropriate fees and that the fee schedule for a particular department or services does not adversely affect the utilization of resources or the competitiveness of MFA as a multi-specialty group seeking to obtain service contracts and to serve the public.

B.    MFA may, from time to time, enter into or approve contracts for the provision of services by MFA physicians, including managed care agreements and the payment terms from third party payors. Physician agrees to provide care under, be bound by and comply with all terms of such contracts. Physician may not contract independently with a health maintenance organization or other payor for clinical patient care services.

C.    All patient care professional fees generated by the Physician shall be billed through the MFA. Physician agrees not to charge, bill for, or receive remuneration for clinical services other than as provided in this Agreement, and to turn over to MFA any remuneration received for such services. Physician must conduct all professional medical services under the auspices of MFA and assign all professional fees to MFA.

D.    Physician may provide scheduled patient care services at institutions or sites other than those serviced by the MFA only after approval by the appropriate Clinical Director and MFA's Chief Executive Officer, and the required site statement for professional liability coverage has been filed by the Physician and approved.

E.    The MFA Business Office will report periodically to each Clinical Department on the financial performance of the Clinical Department, its divisions and its individual Physicians.

VI.    Interruption or Termination of Service.

A.    This Agreement shall terminate immediately upon Physician's death, retirement, resignation, or dismissal. In accordance with MFA policies, upon such events, Physician's compensation shall be as set forth in the MFA Compensation Plan. In the case of resignation, Physician must provide at least one hundred twenty (120) days advance written notice to MFA in order to be eligible for any incentive compensation under the MFA Compensation Plan.

B.    If Physician's full time work is interrupted due to disability, the Physician shall be entitled to such compensation as set forth in the MFA Compensation Plan and such benefits as are provided in the applicable MFA policies on disability.

C.    Despite interruption of the Physician's work or termination of this Agreement for any reason, MFA is entitled to all accounts receivable, professional fees, and other income of the Physician hereunder relating to the periods prior to such event. The Physician acknowledges the right of MFA to receive payment and negotiate checks or other documents in order to obtain payment for services rendered by Physician under this Agreement.

D.  For Physicians with non-tenured faculty appointments at the University, MFA may elect not to renew this Agreement without cause as of the end of any annual term upon giving Physician the following minimum period of notice (as applicable):

   1.  Not later than March 1 of the first year of service in the case of a Physician during his/her first year of employment;

   2.  Not later than December 1 of the second year of service; and

   3.  Not later than June 30 preceding the next annual term, after the second or subsequent years of service.

For all of the above periods, years of service with the MFA shall be deemed to include prior faculty employment with the University.

E.  MFA may terminate this Agreement, effective immediately, for cause, which shall include:

   1.  termination, suspension or other limitation of membership on the Medical Staff or clinical privileges of a hospital at which Physician has privileges, for reasons related to professional conduct (as opposed to a voluntary relinquishment of such membership or privileges unrelated to a review of professional conduct);

   2.  loss or suspension of Physician's license to practice medicine in any jurisdiction material to Physician's performance under this Agreement;

   3.  conviction of or sentencing for a felony or, in the case of a misdemeanor, a misdemeanor that involves moral turpitude or other conduct that the MFA could reasonably expect to have an adverse impact on the business or reputation of the MFA or the University;

   4.  termination by the University of Physician's appointment to the faculty of the University;

   5.  exclusion of Physician from participation in the Medicare or Medicaid Programs; or

   6.  Physician's gross inattention or willful neglect of his/her duties hereunder.

F.  For Physicians with non-tenured faculty appointments to the University: Physician agrees that termination of this Agreement for any reason shall result in the simultaneous, automatic termination of Physician's appointment to the faculty of the University. Upon termination of this Agreement, MFA may notify the University of such termination and its effective date.

VII.  Physician Benefits. In addition to MFA Income set forth in Article IV, Physician shall receive benefits from MFA as follows:

A.  Professional Expense Account. In accordance with MFA's policies, each MFA Clinical Department may budget an amount of money to be used for approved categories of professional expenses for physicians assigned to such departments and incurred in the advancement of their expertise and ability to serve the MFA or University. The Clinical Director of the respective department, in his/her discretion, shall allocate these monies to physicians in his/her department in the faculty in a manner consistent with MFA's obligations hereunder and relevant MFA policies; provided, however, that the total amount expended by the department shall not exceed the actual amount budgeted and received by the Clinical Director.

4

B.  Professional Liability Coverage. MFA shall maintain an insurance plan covering Physician, a description of which is available upon request.

C.  Other Fringe Benefits. Physician is eligible for a retirement program, disability benefit plan, health insurance plan, and group life insurance as described in MFA policy, and subject to the conditions and limitations of such plans. Retirement program and disability plan benefits based upon income shall be calculated on the basis of income received from MFA.

VIII.  Professional Conduct.

A.  Physician agrees that in consideration for the compensation paid, and the benefits provided to Physician, and the costs incurred by MFA hereunder, for a period of one (1) year following expiration or termination of this Agreement for any reason, Physician shall not maintain an office or provide (except in an emergency or other exceptional and non-recurring circumstances) medical or hospital services, at any location within a radius of five miles of The George Washington University Hospital (**"Hospital"**), the Ambulatory Care Center and any practice location at which Physician has been primarily assigned in the two years preceding expiration or termination of this Agreement, without the prior written consent of the MFA, which consent may be granted or withheld in its discretion. Notwithstanding the foregoing, this Section VIII.A. shall not apply to any MFA Physician who was a faculty employee of the University prior to March 1, 1997.

B.  During the term of this Agreement and for a period of one year after its expiration and termination for any reason, Physician shall not (i) solicit for employment, induce to leave the MFA, or employ or engage for work, any person employed by the MFA, without the prior written consent of the MFA, which consent may be granted or withheld in the discretion of the MFA; (ii) solicit any MFA patients or send announcements or publications regarding new offices or practice affiliations to MFA patients, except that this provision shall not prohibit Physician from making announcements about such offices or practice arrangements to the general public in newspapers, periodicals, and mass mailings; (iii) remove patient records from MFA other than pursuant to this Agreement; and (iv) take, make, copy, or distribute in any way lists of MFA patients other than pursuant to this Agreement.

C.  During and after the term of this Agreement (and despite its expiration or termination for any reason), Physician shall refrain from making any oral or written comment to any third party that is derogatory concerning the University, Hospital or MFA, its physicians, or its services, and that is reasonably likely to adversely affect the University's, Hospital's or MFA's reputation or business.

D.  The provisions of this Section VIII shall survive expiration or termination of this Agreement.

IX.  Disposition of Records and Cooperation.

A.  All records of patients attended by the Physician are and shall remain the property of MFA or the relevant hospital. Copies of patient records shall be furnished to appropriate parties in the following circumstances:

1.  A written request for the transfer of medical records may be submitted by a former patient and must be accompanied by a signed release from each patient reasonably satisfactory to MFA.

2.  Copies of records may be transferred when otherwise required or authorized by law.

5

3.  To the University (1) for patients treated by the MFA on or before July 1, 2000; (2) in the event that the University receives a complaint related to patient treated at the MFA; or (3) in the event the University is requested to make payment related to patient care by MFA or is named in a complaint or as a defendant in a lawsuit related to care by MFA.

B.  Physician acknowledges that MFA has a legitimate interest in (1) ensuring continuing care of patients when a physician is temporarily unable to perform his/her duties or terminates this Agreement or is unable to continue in practice; (2) in appropriately billing for and receiving payment for MFA services; (3) in resolving billing disputes; and (4) in defending or resolving legal claims. Accordingly, Physician agrees that despite expiration or termination of this Agreement for whatever reason, he/she will not obstruct MFA's effort to provide continuity of care and he/she shall provide reasonable cooperation to the University and MFA in asserting or defending its rights in matters such as those described above, at no additional expense.

C.  Contract. Physician hereby expressly waives any claims or rights against MFA arising from or relating to Physician's employment, tenure status (if applicable) or other arrangements or understandings with the University. Nothing herein shall be deemed to waive or affect any rights Physician may have arising out of Physician's prior arrangements with the University, including tenure (if applicable).

XI.  Other. This Agreement shall be construed in accordance with the laws of the District of Columbia, without regard to any choice of law provisions thereof. The parties agree that all claims arising under this Agreement shall be resolved through binding arbitration in accordance with the American Health Lawyers Alternative Dispute Resolution Rules of Procedures. Each party shall bear its own costs of arbitration.

MEDICAL FACULTY ASSOCIATES, INC.,                   PHYSICIAN
d/b/a GEORGE WASHINGTON UNIVERSITY
MEDICAL FACULTY ASSOCIATES

_____                    _____
                                                   (Signature of Physician)

_____                    DINA SOLIMAN
        Alan G. Wasserman, MD                      (Typed Name of Physician)
             President
      Medical Faculty Associates, Inc
                                                   June 12 2000
                                                   (Date)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**DINA SOLIMAN,**

               **Plaintiff,**

    *v.*

**GEORGE WASHINGTON UNIVERSITY,**
**et al.**

            **Defendants.**

---

**Case No. 1:08-CV-01137 RJL**

## ORDER

Having considered the Motion of Defendants Medical Faculty Associates, Dr.

Berrigan, Dr. Dangerfield, Dr. Sankar and Dr. Guritzky to Dismiss and to Compel

Arbitration, the Plaintiff's Opposition thereto and the record in this case,  it is hereby

ORDERED, that the Motion to Dismiss and to Compel Arbitration be and hereby

is GRANTED, and the Complaint with regard to Medical Faculty Associates, Dr.

Berrigan, Dr. Dangerfield, Dr. Sankar and Dr. Guritzky is hereby DISMISSED WITH

PREJUDICE.

It is SO ORDERED, this _____ day of _____, 2008.


_____
United States District Judge