# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DINA SOLIMAN,** | |
|            **Plaintiff,** | |
|    *v.* | Case No. 1:08-CV-01137 RJL |
| **GEORGE WASHINGTON UNIVERSITY,** et al. | |
|            **Defendants.** | |

**REPLY BRIEF OF DEFENDANTS MEDICAL FACULTY ASSOCIATES, DR. BERRIGAN, DR. DANGERFIELD, DR. SANKAR AND DR. GURITZKY IN SUPPORT OF MOTION TO DISMISS AND TO COMPEL ARBITRATION**

Defendants Medical Faculty Associates, Inc. ("MFA"), Michael Berrigan, M.D., Paul Dangerfield, M.D., Jason Sankar, M.D. and Ronald Guritzky, M.D. (the "MFA Physician Employees")(collectively "the MFA Defendants") submit this Reply Brief in support of their Motion to Dismiss the Complaint and to Compel Arbitration.

Although Plaintiff argues that the arbitration agreement she admittedly entered into with MFA is not sufficiently broad to cover her claims against the MFA Defendants, her arguments are at odds with applicable law. She does not cite a single case where employment discrimination claims have been held to be outside the scope of such an arbitration agreement, nor could she. Indeed, it is illogical to argue that a litany of employment complaints alleging discrimination and disparate treatment does not arise under the Plaintiff's employment agreement.

On the essential points, Plaintiff is in agreement with the MFA Defendants. She does not dispute the broad applicability of the Federal Arbitration Act. She does not dispute that it is for the court to determine whether the parties entered into an arbitration

agreement and whether that agreement applies to the controversy at issue. She does not dispute the validity of her own agreement to arbitrate. She is largely in agreement with regard to applicable law, with the noted exception of her unsupportable arguments that (a) the arbitration language in her agreement should be narrowly construed; and (b) the MFA Physician Defendants, as non-signatories to the agreement between Plaintiff and MFA, lack standing to compel her to arbitrate her claims against them.

To the extent Plaintiff argues that the arbitration provision should be narrowly construed, there is no case law which holds that an arbitration provision in an employment agreement should be so narrowly construed that it precludes employment discrimination claims. Plaintiff cites law which has largely been rejected by other courts, and which, even if followed in this jurisdiction, is not relevant to the types of contract performance claims raised by Plaintiff. That largely discredited case law addresses only whether the arbitration provisions are sufficiently broad to cover pre-formation conduct or other matters unrelated to contract performance. The case authority upon which Plaintiff relies is thus not remotely relevant to the issues before the Court in this case, even if it remained good law.

To the extent Plaintiff argues that the MFA Physician Defendants lack standing to compel her to arbitrate her claims against them, Plaintiff cites no case support and makes no effort to refute the abundant authority presented by the MFA Defendants in their Memorandum in Support of their Motion to Dismiss and to Compel Arbitration (the "Initial Memorandum"). There are good and compelling reasons to compel Plaintiff to arbitrate such claims, all aimed at supporting the integrity of the underlying arbitration agreement.

As detailed below, Plaintiff errs in arguing that she should not be compelled to arbitrate her claims against the MFA Defendants. At bottom, there are few issues in dispute with regard to applicable law, and none which weigh against granting the Motion to Dismiss of the MFA Defendants.

**A. The Case Law Relied Upon by Plaintiff in Arguing That the Scope of Her Arbitration Agreement is Narrow is Both Inapplicable to the Issues Raised Against the MFA Defendants and Resoundingly Rejected by Other Courts.**

Plaintiff argues that the language contained in her Arbitration Agreement is too narrow to be enforced, a startlingly unsupportable proposition. She argues "there is no published case law from this Circuit" interpreting "arising under" language and that other courts have interpreted "arising under" in an extremely circumscribed way. Plaintiff errs in both respects.

The first case relied upon, and actually quoted by Plaintiff for the proposition that "the language 'arising under' is more restrictive than 'arising out of' …" is a correct quotation -- as far as it goes. However, in that case, this Court ordered arbitration, and furthermore, Plaintiff's selectively quoted language leaves out the following language from the same opinion as to the broad sweep of "arising under" language:

> [A]lthough this Circuit has yet to interpret the scope of the arbitration clause with the language "arising out of," ***it did hold that the phrase "arising under" is to be interpreted broadly.***

*Dowley v. Dewey Ballantine, LLP*, Civil Action No. 05-622 (EGS), 2006 WL 1102768 (D.D.C. Apr. 26, 2006) (emphasis added); citing *Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.*, 580 F.2d 746 (D.C. Cir. 1988).

Thus, contrary to Plaintiff's disingenuous assertions, the language "arising under" has in fact been interpreted by this Circuit to be broad. Whether the scope of the

arbitration provision might be deemed to be broader still if it included the language "relating to" is for purposes of this lawsuit irrelevant. All of the claims asserted in the lawsuit are employment claims involving disputes during the course of plaintiff's employment and with regard to the status of her employment. As such there is no question that Plaintiff's claims against the MFA Defendants all "arise under" her employment agreement. Thus, even if Plaintiff were correct in her assertion that the arbitration provision should be narrowly construed, there is no authority that it should be so narrowly construed that it does not apply to basic employment claims.

In *Dowley,* this Court enforced the terms of an arbitration agreement pursuant to which a partner in a law firm agreed to arbitrate "a claim or controversy arising out of this Agreement." The Plaintiff argued that without the additional terms "relating to," the phrase "arising out of" was not sufficiently broad to encompass his claims of age discrimination, breach of contract, ERISA, fraud and accounting fraud. In fact, in this case heavily relied upon by Plaintiff, this Court rejected the Plaintiff's arguments and *all claims were deemed by this Court to be arbitrable because they "touched" matters covered by the partnership agreement. Dowley*, 2006 WL 1102768, at *9.

In rejecting the plaintiff's narrow interpretation of the agreement in *Dowley*, this Court implicitly rejected older opinions from other jurisdictions cited by Plaintiff in her brief, for the proposition that claims for fraud in the inducement may not be covered under arbitration agreements containing "arising out of" and "arising under" language unaccompanied by "or relating to." *See, e.g., Mediterranean Enters., Inc. v. Ssangyong Corp.,* 708 F.2d 1358, 1464 (9th Cir. 1983)(contract requiring that any "disputes arising hereunder or following the formation of joint venture [which was never formed] shall be

settled through binding arbitration" was not sufficiently broad to cover fraud in the inducement claim) and *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961)(a specific arbitration provision, "if any dispute or difference should arise under this Agreement" was held to be insufficiently broad to cover issues relating to pre-contract formation, or fraud in the inducement, a holding largely since rejected even by the Second Circuit). See, e.g., *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967)(a provision that all claims "arising out of or relating to" is "easily broad enough to encompass" fraud in the inducement and other contract formation issues) and cases cited below.

Though it is not relevant for purposes of this lawsuit, the restrictive interpretations of the Ninth Circuit in *Mediterranean Enterprises* and the Second Circuit in *In re Kinoshita,* holding that pre-contract formation issues may not be arbitrable, have largely been rejected by other Courts. *Gregory v. Electro-Mech. Corp.,* 83 F.3d 382, 385-86 (11th Cir. 1996) (claims of fraud, fraudulent inducement, deceit, misrepresentation, and breach of good faith and fair dealing were all encompassed in an agreement to arbitrate disputes which may "arise hereunder."); *Sweet Dreams, Unlimited, Inc. v. Dial-a-Mattress Int'l, Ltd.,* 1 F.3d 639, 642 (7th Cir. 1993) ("arising out of" reaches all disputes having their origin or genesis in the contract, including formation and performance issues); *Long v. Silver,* 248 F.3d 309 (4th Cir. 2001)(reiterating earlier rejection of Ninth Circuit rationale in *Mediterranean Enterprises* as inconsistent with Federal Arbitration Act); *Battaglia v. McKendry,* 233 F.3d 720, 725 (3d Cir. 2000)("arising under" and "arising out of" are given broad construction and encompass claims going to the formation of underlying agreement, as well as all performance claims). The Second

Circuit, without explicitly overruling *In re Kinoshita*, has held that "if the allegations underlying the claims touch matters covered by the sales agreement, then those claims must be arbitrated, whatever the legal labels attached to them." *See also, Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987)("all claims of whatever nature arising under this contract" is broad enough to reach fraud in the inducement); *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 33-34 (2d Cir. 2002)("any right of action hereunder" is broad enough to encompass claim of fraudulent inducement).

Even if the authority relied upon by Plaintiff were not questionable, it is in any event irrelevant. The issues against the MFA Defendants all relate to disputes with regard to the interpretation of the contract and matters of performance. The courts in *Mediterranean Enterprises* and *In re Kinoshita* fully recognized that the arbitration agreements at issue in those cases were enforceable with regard to such issues. The holding that the provisions were "narrow" related only to whether they covered pre-formation conduct, something which is not at issue here.

Thus, the law is clear that the language of Plaintiff's contract with MFA is to be broadly interpreted, even if it might be possible to have still broader language. The law also is clear, as briefed in the Initial Memorandum, "that there is a strong federal policy in favor of arbitration and '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Dowley*, 2006 WL 1102768, at *2,[1] citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 25 (1983). "When the

---

[1] *See also, Wolff v. Westwood Mgmt., LLC,* 503 F. Supp. 2d 274 (D.D.C. 2007)(enforcing arbitration clause which provided: "the parties agree not to enter into any court action in any dispute which may arise during construction and management of the office building complex and agree that any dispute or controversy that cannot be amicably settled will be submitted to arbitration," rejecting a contention that temporal restrictions governed, in light of broad mandate of Federal Arbitration Act).

contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Dowley*, 2006 WL 1102768, at *2, citing *AT&T Tech. Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 650 (1986).

### B. Plaintiff Errs in Her Assertion That Any Claims She Might Have With Regard to Conduct Post-Dating Her Resignation are Outside the Scope of the Arbitration Agreement.

In her Complaint, Plaintiff speculates that unidentified individuals may have made comments to prospective employers after the date of her resignation. In her Opposition, Plaintiff asserts that to the extent any of the MFA Defendants may have participated in such conduct, the arbitration provision would not apply to her complaints. She asserts that any conduct that might have occurred after the date of her resignation would no longer be covered by the arbitration agreement. In this regard, she cites no supporting law. She also errs. Assuming solely *arguendo* that such conduct had occurred, any claim made by Plaintiff with regard to such conduct is well within the scope of the arbitration agreement. It is well established in the law that an arbitration clause is enforceable after the expiration of the contract when the dispute is over an obligation created by the contract. *Wolff*, 503 F. Supp. 2d at 280-81, citing *Montgomery Mailers' Union No. 127 v. Advertiser Co.*, 827 F.2d 709, 712 (11th Cir. 1987) and *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 252 (1977). The Supreme Court's reasoning in this regard is that the arbitration provision is a "structural provision" that relates to remedies and dispute resolution, and not an

obligation regarding performance.  The arbitration provision thus survives termination of the contract.

### C. Plaintiff Errs in Her Assertion That the MFA Physician Defendants, as Non-Signatories to her Physician Agreement with MFA, Have no Right to Enforce the Arbitration Provisions.

Plaintiff does not dispute the law presented in the Initial Memorandum with regard to the rights of non-signatories to an arbitration to benefit from the arbitration provision.  She also does not dispute that her entire claim against MFA is premised on the alleged actions of the MFA Physicians.  She also does not seriously dispute that by allowing her claims against the MFA Physicians, who at all times are alleged to have been acting within the scope of their employment, to proceed in this forum, this Court would be allowing her to circumvent the clearly binding and applicable arbitration provision to which she agreed.

As detailed in the Initial Memorandum, the MFA Physician Defendants are employees of MFA, and the claims against MFA are premised on their alleged actions.  As such, the claims against them are inextricably intertwined with the claims against MFA.  They clearly also, as employees of MFA, act as agents of MFA, and thus reasonably and consistently with applicable law cited in the Initial Memorandum, should be third party beneficiaries of the arbitration agreement between Plaintiff and MFA.  There is no legitimate legal basis for denying such standing.

The fatal flaw in Plaintiff's argument with regard to lack of standing is the same as the fatal flaw in her argument that the arbitration provision is inapplicable to her claims against MFA.  She claims that employment discrimination claims are insufficiently related to the employment agreement to be covered.  There is no case

authority to support such a proposition, and indeed the authority is to the contrary as detailed in the Initial Memorandum.

## CONCLUSION

For the foregoing reasons the MFA Defendants respectfully request that their Motion to Dismiss be granted, and that to the extent Plaintiff believes she has any legitimate claims with regard to them, that she be ordered to arbitrate such claims pursuant to the terms of the arbitration agreement to which Plaintiff is a party.

Respectfully Submitted,

 /s/ Frank C. Morris, Jr.
Frank C. Morris, Jr. (#211482)

 /s/ Kathleen M. Williams
Kathleen M. Williams (#334888)
Of Counsel

EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW
Suite 700
Washington, D.C. 20037-1156
(202) 861-1880   Telephone
(202) 296-2882   Facsimile

Counsel for Defendants
Medical Faculty Associates, Dr. Berrigan, Dr. Dangerfield, Dr. Sankar
And Dr. Guritzky

August 29, 2008

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Reply Brief in Support of the Motion to Dismiss of Defendants Medical Faculty Associates, Dr. Berrigan, Dr. Dangerfield, Dr. Sankar and Dr. Guritzky was served on the 29th day of August, 2008 via electronic delivery upon the following:

>Lynn Bernabei, Esq.
>David Wachtel, Esq.
>Emily Read, Esq.
>Bernabei & Wachtel, PLLC
>1775 T Street
>Washington, D.C. 20009
>
>Henry Morris, Esq.
>Arent Fox, LLP
>1050 Connecticut Ave. N.W.
>Washington, D.C. 20036-5339
>
>Andrew S. Block, Esq.
>Andrew J. Marcus, Esq.
>1233 Twentieth Street, N.W.
>Suite 800
>Washington, D.C. 20036

    /s/ Kathleen M. Williams
Kathleen M. Williams