**IN THE UNITED STATES DISTRICT COURT FOR**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DINA SOLIMAN,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE GEORGE WASHINGTON UNIVERSITY, *et al.*,** <br><br> **Defendants.** | ) | **Civil Action No.: 1:08-cv-01137-RJL** |

**THE GEORGE WASHINGTON UNIVERSITY'S REPLY TO SOLIMAN'S OPPOSITION TO THE UNIVERSITY'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT**

Soliman seeks to evade partial dismissal by relying upon the continuing violation doctrine. Her reliance, however, is misplaced. To the contrary, because Soliman complains about discrete alleged discriminatory acts, and alleged discriminatory acts that she knew about years ago, the doctrine is completely inapposite to this case.

The Court should narrow this case from the outset by dismissing Soliman's Title VII and DCHRA claims against the University to the extent that she premises them upon discrete acts of alleged misconduct that purportedly occurred beyond their respective limitations periods. [1]

[1] Soliman previously conceded that her Title VII claim is time-barred to the extent that she premises it upon her removal from the Heart Team (Am. Cmplt ¶ 19), the rejection of her application for a position on the Heart Team (Am. Cmplt. ¶ 23), and the "false rumors" generated about her at that time (Am. Cmplt. ¶ 22). Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant George Washington University's Motion for Partial Dismissal of Plaintiff's Complaint, at 10.

# I. Argument

## A. Soliman's Title VII Claim Against The University Is Time-barred To The Extent That She Premises It Upon Alleged Conduct That Purportedly Occurred Before November 11, 2006.

The law distinguishes between acts of discriminatory intimidation, ridicule, or insult, *i.e.*, a hostile work environment, to which the continuing violation doctrine might apply, from discrete acts of discrimination or retaliation, to which the doctrine has no bearing. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Lester v. Natsios*, 290 F. Supp.2d 11, 33 (D.D.C. 2003); *Webb v. District of Columbia*, 864 F. Supp. 175, 183 (D.D.C. 1994).

The danger of blurring that distinction is apparent. Allowing plaintiffs "[t]o conveniently cast all the allegations in this complaint as a related series of discriminatory or retaliatory actions would permit [them] to bypass the Title VII administrative process." *Powell v. Castaneda*, 390 F. Supp.2d 1, 9 (D.D.C. 2005) (quoting *Childers v. Slater*, 44 F. Supp.2d 8, 18 (D.D.C. 1999)). *See Morgan*, 536 U.S. at 112 ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."); *Brantley v. Kempthorne*, No. Civ. A. 06-1137 (ESH), 2008 WL 2073913, at *8 (D.D.C. May 13, 2008) ("hostile work environment plaintiff may not 'bootstrap' her alleged discrete acts of discrimination and retaliation into a broader hostile work environment claim") (citing *Keeley v. Small*, 391 F. Supp.2d 30, 51 (D.D.C. 2005)); *Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 (D.D.C. 2005) (a plaintiff may not cure the failure to timely complain about certain incidents by stringing them together to create a hostile environment claim).

That is precisely what Soliman attempts to do here. She premises her Title VII claim upon discrete incidents of purported wrongdoing, not a continuous chain of related

acts that extends into Title VII's limitations period. *See* University's Memorandum of Points and Authorities in Support of its Motion for Partial Dismissal of Plaintiff's Amended Complaint ("University Memorandum"), at 3-5. As the Supreme Court instructed in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), courts should exclude time-barred discrete acts. *Id.* at 113.

For example, she bases her claim upon (1) the alleged suspension of her medical staff membership and clinical privileges on September 15, 2006, Am. Cmplt. ¶¶ 76-78; (2) receiving from Dr. Berrigan performance evaluations that did not fairly reflect her accomplishments and contributions, Am. Cmplt. ¶ 66; and (3) Dr. Berrigan and Dr. Dangerfield falsely criticizing her performance to officials at Holy Cross Hospital, where she had applied for and was denied a position, Am. Cmplt. ¶ 75. *See* University Memorandum, at 3-5, for additional alleged discrete acts that occurred before November 11, 2006.

Those are discrete acts that occurred before November 11, 2006. *See Morgan*, 536 U.S. at 113, 114 (discrete acts, which may include work suspension and charge for violation of work rules, are not actionable if time-barred, even when they are related to acts alleged in timely filed charges). Thus, they are not actionable under Title VII. Neither can she avoid dismissal by pointing to her decision to resign in 2007. *Id. at 113* (plaintiff "could not use a termination that fell within the limitations period to pull in the time-barred discriminatory act"). In short, the continuing violation doctrine is inapposite to the facts alleged in the Amended Complaint.

Moreover, "[u]nder the law of this Circuit, the continuing violations doctrine will not toll the statute of limitations where plaintiff is aware of the alleged violations." *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 10 (D.D.C. 2008) (citing *Moore v. Chertoff,* 437 F. Supp. 2d 156, 162-63 (D.D.C. 2006)); *see Butler v. Fairbanks Capital*, No. 04-0367, 2005 WL 5108537, at * 9 (D.D.C. Jan. 3, 2005).

Soliman neither alleges, nor even remotely suggests, that she was unaware of the University's alleged wrongdoing. Rather, the Complaint makes clear that she knew about it early on. Indeed, alone and through her attorney, she repeatedly complained, about discrimination and retaliation beginning as early as February, 2005. *See, e.g.*, Am. Cmplt. ¶ 52 ("On February 15, 2005, Dr. Soliman's attorney sent a letter to defendant MFA's General Counsel, Mark Tatelbaum, and defendant GWU's Associate General Counsel, Mary Lynn Reed, stating that defendants had discriminated and retaliated, against Dr. Soliman by refusing to allow her to work on the Heart Team, paying her less than male colleagues, and creating a hostile work environment."); Am. Cmplt. ¶ 66 ("On February 6, 2006, Dr. Soliman's attorney told defendants GWU and MFA that defendant Berrigan had evaluated Dr. Soliman unfairly because defendant had denied her the opportunity to work with residents. . . . Her attorney's letter stated that the defendants' discriminatory and retaliatory actions had damaged Dr. Soliman's reputation and restricted her future career opportunities."); Am. Cmplt. ¶ 69 ("In May 2006, Dr. Soliman met with Dr. James Scott, the Dean of defendant GWU's Medical School, to report the defendants' discriminatory and retaliatory treatment of her."); Am. Cmplt. ¶ 70 ("On May 23, 2006, Dr. Soliman followed up with Dr. Scott regarding defendants'

discriminatory and retaliatory treatment."); Am. Cmplt. ¶ 94 ("In an October 3, 2006 letter to Dr. Silva, Dr. Soliman objected, through counsel, to defendant Guritzky reviewing the cases because she did not believe that defendant Guritzky would conduct an unbiased review as he had discriminated and retaliated against her in the past by making false statements about her, refusing to schedule her to work with residents, and giving her harsh and unfair schedules in the EP lab. Defendants DHP, UHSDC and GWU, . . . and defendant MFA ignored her complaints about defendant Guritzky's demonstrated bias against her.").[2]

In short, Soliman's citation to the continuing violation doctrine contributes nothing to her case. Thus, her Title VII claim against the University fails as a matter of law, to the extent that she premises it upon discrete acts of alleged misconduct that occurred before November 11, 2006.

### B. Soliman's DCHRA Claim Against The University Is Untimely To The Extent That She Premises It Upon Alleged Conduct That Purportedly Occurred Before September 6, 2006.

Soliman's DCHRA claim fares no better, to the extent that she premises it upon discrete acts of alleged misconduct that purportedly occurred before September 6, 2006.

Soliman points to four paragraphs in her Amended Complaint in which she alleges "continued" conduct after September 6, 2006. Pl. Opp. at 9 (citing Am. Cmplt. ¶¶ 29, 31, 49-50). She is wrong. None of those paragraphs point to alleged conduct that

[2] To the extent that the University relies upon facts alleged in Plaintiff's Amended Complaint, it does so only for the purposes of this Motion and without any admission as to the truth of those alleged facts. Further, the University assumes only for the purposes of this Motion and without prejudice that these allegations, alone or taken together, constitute actionable "adverse actions" that were committed by an agent or employee of the University.

purportedly continued into the limitations period: (1) "beginning in or about 2002, Dr. Soliman's male colleagues, . . . , subjected her to a pattern of discriminatory and retaliatory acts," Am. Cmplt. ¶ 29; (2) Dr. Pla recommended to Dr. Berrigan that he reprimand Dr. Dangerfield and Dr. Sankar for their alleged hostile and abusive treatment of Soliman in 2002, Am. Cmplt. ¶ 31; and (3) On May 12, 2004, Dr. Brian McGrath and Dr. Sankar criticized Soliman in front of physicians and hospital staff, and Soliman emailed Dr. Berrigan two days later, on May 14, 2004, to request that he address Dr. McGrath's alleged "hostile and discriminatory behavior," Am. Cmplt. ¶¶ 49-50. Thus, the continuing violations doctrine offers no protection to Soliman's stale allegations.

Also, because Soliman (1) pins her claim upon discrete discriminatory and retaliatory acts; and (2) knew about the University's alleged violations early on, the continuing violation doctrine upon which she relies does not salvage her claim. *See* pp. 2-5, *supra*.

## II. Conclusion

For all of the foregoing reasons, and for the reasons set forth in the University's opening brief, the Court should grant the University's Motion for Partial Dismissal of Plaintiff's Amended Complaint and issue an order (1) dismissing Soliman's Title VII claim against the University to the extent that she premises it upon alleged conduct that purportedly occurred before November 11, 2006, and (2) dismissing Soliman's DCHRA claim against the University to the extent that she premises it upon alleged conduct that purportedly occurred before September 6, 2006.

Respectfully submitted,

ARENT FOX LLP

By: ____/s/ Kristine J. Dunne.____________
Henry Morris, Jr. (Bar No. 375894)
Kristine J. Dunne (Bar No. 471348)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
*Counsel for Defendant The George Washington University*