UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DINA SOLIMAN, M.D. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1137 (RJL) |
| | ) | |
| | ) | |
| GEORGE WASHINGTON UNIVERSITY, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION
(September **29**, 2009) [# 27, 30]

The plaintiff, Dr. Dina Soliman ("plaintiff" or "Soliman"), was employed as a doctor and faculty member of the George Washington University medical school. Soliman ultimately resigned and brought this lawsuit against a number of defendants including George Washington University ("GWU" or "the University") and a bevy of her former colleagues. A subset of the defendants have submitted the two motions before this Court. Specifically, GWU filed a Motion for Partial Dismissal, and defendants District Hospital Partners, L.P, United Health Services of DC, Inc., and Richard B. Becker, M.D. ("the Hospital defendants") filed a separate Motion to Dismiss. Because the motions have many common facts, they will both be addressed in this Memorandum Opinion. For the following reasons, GWU's Motion for Partial Dismissal is GRANTED and the Hospital defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Soliman began working at GWU in 1998 as an assistant professor of medicine and a practitioner in the field of cardiothoracic anesthesiology. (Am. Compl. ¶ 16.) Technically, she was employed by both GWU and Medical Faculty Associates, Inc. ("MFA")[1]. (*See id.* ¶ 18.) MFA is a medical practice group associated with GWU that maintains offices in GWU's Ambulatory Care Center. (*See id.* ¶ 6.) Soliman, of course, worked at the University's Hospital ("GW Hospital"), which is owned and operated by District Hospital Partners ("DHP")—a partnership of GWU and United Health Services of D.C., Inc. ("UHS"). (*See id.* ¶ 4.)

Soliman's complaint includes an extensive list of employment-related grievances which she contends constitute gender discrimination, a hostile work environment, and retaliation, all in violation of Title VII and the D.C. Human Rights Act ("DCHRA"), the highlights of which can be summarized as follows.  The genesis of Soliman's grievances seems to be when she was removed from the University's "Heart Team" in 2000. (*Id.* ¶ 19.)  Her subsequent attempts to rejoin it were rejected in 2001, and Soliman complains that while her application to rejoin was pending, several colleagues began spreading rumors about her for the purpose of keeping her off the Team. (*Id.* ¶¶ 19, 21-23.) Indeed, Soliman alleges that her colleagues continued to circulate negative statements about her medical ability in front of other doctors, for the purpose of undermining her professional reputation, up to the time of her ultimate resignation from GWU in 2007.

---

[1] Since filing her Amended Complaint, Soliman voluntarily dismissed MFA as a defendant. (Pl.'s Notice of Voluntary Dismissal [# 31].)

(*See, e.g., id.* ¶¶ 26, 29, 30, 33, 34, 47, 49, 68, 98.)  She also contends that, from 2002 to 2006, the doctors responsible for her schedule gave her unfavorable assignments which resulted in damage to her career.  (*See, e.g., id.* ¶¶ 24-26, 29, 48, 54, 55, 67.)

Soliman resigned on January 26, 2007, to take a position with Virginia Commonwealth University.  (*Id.* ¶ 104.)  Following her resignation, the Hospital defendants and MFA notified the National Practitioner Databank ("NPDB") that Soliman had resigned her hospital staff privileges while she was under investigation for an adverse patient incident.[2]  (*See id.* ¶ 105.)  Soliman claims that the NPDB report caused damage to her reputation and delayed her start at VCU a few months because she had trouble obtaining new medical staff privileges there.  (*See id.* ¶ 107-09.)

Soliman contends in her complaint that this was not the first time some or all of the defendants interfered with her attempts to work elsewhere.  For example, in August 2006, Soliman applied for a position at Holy Cross Hospital in Maryland but was rejected because, she claims, two of her GWU/MFA colleagues "falsely criticized" her to Holy Cross management.  (*See id.* ¶ 75.)  Also, in October 2006, a month after her involvement with the adverse patient incident, Soliman applied for a position at New England Medical Center.  (*See id.* ¶ 95.)  Soliman was denied this position as well, which she claims was

---

[2] In September 2006, Soliman was the attending anesthesiologist for an obese patient who showed signs of complication during surgery and who died five hours after his release from the surgery recovery room.  (*See id.* ¶ 76.)  Soliman's medical staff privileges at GW Hospital were suspended less than two weeks later, and though they were reinstated within a week, the reinstatement was conditioned on a six-week "internal confidential peer review" of her work. (*See id.* ¶ 76-86.)

due again to GWU and MFA officials who "falsely criticized" her to New England
Medical School's management. (*See id.*)

Soliman complained to her Department Chair often about what she perceived to be
this unfair treatment, by email and in person, beginning in December 2001. (*See id.* ¶
152.) Ultimately, she retained a lawyer in 2005, through whom she wrote formal letters
of complaint to the defendants on February 15, 2005, and February 6, 2006. (*Id.*) A year
and a half later, on September 6, 2007, Soliman filed a discrimination charge with the
Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 116.) The EEOC sent
Soliman a Notice of her Right to Sue on April 3, 2008, and she filed this suit less than
ninety days later, on June 30, 2008. (*Id.* ¶ 117.) GWU has moved for partial dismissal of
Soliman's complaint, while the Hospital defendants have moved for complete dismissal.
Soliman, not surprisingly, opposes both motions. For the following reasons, GWU's
motion is GRANTED and the Hospital defendants' motion is GRANTED in part and
DENIED in part.

## ANALYSIS

At issue in both motions is whether partial or complete dismissal is warranted
under Federal Rule of Civil Procedure 12(b)(6). Under that Rule, dismissal is warranted
if it appears that, on any reasonable reading of the complaint, there are no set of facts
which could be proved to justify the relief sought. *See Conley v. Gibson*, 355 U.S. 41,
45-46 (1977). Indeed, the Supreme Court recently held that Rule 12(b)(6) requires
dismissal if the complaint does not set forth "plausible" claims. *See Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Courts may even dismiss claims *sua sponte* under Rule 12(b)(6), without giving the plaintiff an opportunity to replead, if the plaintiff "cannot possibly win relief." *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998). Unfortunately for Soliman, the Court must dismiss the majority of her claims because they are either time barred, not plausible, or both. The sole claim not dismissed here is Soliman's tortious interference with business claim—that claim remains open only to the extent that discovery may ultimately demonstrate that defendants misused their bylaws.

## 1. GWU's Motion for Partial Dismissal

GWU argues that Soliman's claims must be dismissed on the grounds that they are time barred. I agree. Under Title VII, a plaintiff cannot bring claims premised on conduct that allegedly occurred more than 300 days before she filed her EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1) (2008), *Mohasco Corp. v. Silver*, 447 U.S. 807, 810 (1980). Similarly, under the DCHRA, a plaintiff cannot bring claims premised on conduct that allegedly occurred more than one year before her EEOC charge. *See* D.C. Code § 2-1403.04(a) (2009); *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 885-86 (D.C. 2008). Soliman filed her EEOC charge on September 6, 2007, but now argues that because she properly pled a hostile work environment, her claims are subject to a special limitations rule: i.e., if any act that contributes to a hostile work environment

occurred within the filing period, then acts committed during the entire hostile period may be considered. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002). To evaluate hostile work environment claims, courts must "look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 116 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Unfortunately for Soliman, the circumstances she has alleged, even if true, do not amount to a hostile work environment and thus do not warrant application of the continuing violations doctrine. How so?

Soliman's complaint, in essence, focuses on a number of discrete acts, such as: (1) her termination from the "Heart Team," (2) her non-selection for certain administrative positions, (3) defendants' alleged interference with her applications to work elsewhere, and (4) defendants' response to the adverse patient incident which occurred under Soliman's care. She further tries to knit these acts together into a patchwork quilt evincing a larger "campaign of discrimination" by pleading certain repeated acts, like punitive scheduling and unfairly negative criticism. (Pl. Opp'n [# 33] at 8.) Missing most importantly, however, are any alleged acts—repeated or discrete—of gender based discrimination! [3]

---

[3] The only allegations that relate to Soliman's gender are her claims that, in 2001, while her application to rejoin the Heart Team was pending, several of her colleagues spread false rumors about affairs between Soliman and other hospital employees. (Am. Compl. ¶ 22.) The allegations occurred long before the statutory time bars, however, and Soliman has already

Soliman has thus failed to plead in Count Two that she was discriminated against *because of* her sex, as required by 42 U.S.C. § 2000e-2(a)(1). *See Harris*, 510 U.S. at 21. As a result, Soliman has also failed to plead a discriminatory hostile work environment claim in Count Two, and therefore, she cannot avail herself of the continuing violation doctrine to prevent statutory time bars from applying to that Count. Moreover, based on Soliman's failure to plead *any* gender discrimination whatsoever, Count Two must be dismissed in its entirety, *sua sponte*. Simply put, Soliman cannot possibly win relief on a gender discrimination claim when she has pled no facts to suggest that any of defendants' conduct was motivated by her gender. *See Davis* 158 F.3d at 1349.

As for Count Three, which alleges retaliation in violation of Title VII and the DCHRA, it too must be dismissed. Once again, Soliman fails to allege any gender discrimination. Instead, she merely recounts her repeated informal communications to her department chair complaining of vague discriminatory conduct, and later, her lawyer's more formal communications on the same subject. Like Count Two, it is nearly impossible for this Court to find Soliman *reasonably* believed she was the victim of "gender discrimination" when she has failed so utterly to allege that *any* gender discrimination took place. Thus, absent a reasonable belief that what she was opposing was unlawful discrimination, Soliman cannot possibly win relief on her retaliation claims, and they must be dismissed *sua sponte*. *See Fowler v. District of Columbia*, 404 F. Supp. 2d 206, 210 (D.D.C. 2005) (rejecting Title VII and DCHRA retaliation claims

---

conceded that they are in fact time barred because they do not relate to any of her later allegations. (Pl. Opp'n to First GWU Mot. for Partial Dismissal [# 21] at 10.)

7

based on unreasonableness of plaintiff's belief that conduct he opposed violated Title VII).

## 2. The Hospital defendants' Motion to Dismiss

The Hospital defendants have moved for a complete dismissal of Soliman's complaint as to them. These defendants are named in two of the four Counts: Count One, tortious interference with a business relationship, and Count Four, aiding and abetting violations of the DCHRA. As to Count Four, it must be dismissed for failure to state a claim under Rule 12(b)(6) for the reasons stated above. In short, the Hospital defendants could not aid and abet DCHRA violations that there is no plausible basis to believe occurred. As to Count One, however, while the Court agrees that many of Soliman's claims must be dismissed, it will defer judgment on Soliman's claim regarding the defendants' misuse of their bylaws. How so?

To sufficiently plead Count One, Soliman must allege the following essential elements of a claim for tortious interference with economic advantage under District of Columbia law: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) resultant damage. *See Bennett Enterprises, Inc.* v. *Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995). Indeed, with respect to the third element of intentional interference, "a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability." *Id.* (quoting

8

*Genetic Sys. Corp. v. Abbott Labs*, 691 F. Supp. 407, 423 (D.C. App. 1977). What is required, rather, is "a 'strong showing of intent' to disrupt ongoing business relationships." *Id.* Most of Soliman's Count One allegations must be dismissed because of her wholesale failure to plead enough to make a plausibly "strong showing" of the necessary intent. Indeed, Soliman's allegations that defendants' agents "damaged her professional reputation, in order to drive her out of her job, by telling 'other physicians that [she] was incompetent,' and constantly questioning her judgment in front of her colleagues, residents and other hospital staff" are non-specific and speculative, at best. (Pl. Opp'n [# 38] at 10.) Her colleagues' comments may have been unwarranted in her own view, perhaps even malicious, but Soliman no more than speculates that these comments were made with the specific intent to interfere with her employment.

The same can be said of defendants' alleged interference with Soliman's applications to Holy Cross Hospital and New England Medical Center. (*See id.* at 11.) Soliman's claim that defendants criticized and negatively evaluated her—to intentionally prevent her from working at those two hospitals—does not offer a single shred of fact to plausibly support the nefarious intent she imputes to defendants. Finally, Soliman failed to allege any purpose whatsoever with respect to defendants' report to the NPDB. She argues only that defendants "falsely notified" the NPDB of her resignation, *not* that defendants did so with any particular purpose. (*See id.* at 17) Simply put, all these allegations fail to allege the strong showing of intentional interference required in this jurisdiction.

9

The same cannot be said, however, of Soliman's claims concerning defendants' misuse of their bylaws.  According to Soliman, defendants did not obey their own bylaws when they investigated her role in the adverse patient incident, summarily suspended her staff privileges, and then reinstated her privileges contingent on a six-week review period.  (*See id.* at 10.)  In this jurisdiction, a physician can sufficiently plead tortious interference with a business relationship by merely submitting a "barebones assertion that 'defendants' failure to afford [the physician plaintiff] the process and protections encompassed in its bylaws amounted to arbitrary, capricious, and otherwise discriminatory conduct.'"  *See Canady v. Providence Hosp.*, 942 F. Supp. 11, 18 (D.D.C. 1996) (quoting *Okusami v. Psychiatric Inst. of Washington*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).  Soliman's Amended Complaint has satisfied this low threshold, and this claim will therefore remain intact at least throughout the upcoming discovery process in this case.

## CONCLUSION

Thus, for all of these reasons, GWU's Motion for Partial Dismissal is GRANTED, plaintiff's remaining claims in Counts Two and Three are dismissed *sua sponte*, and the Hospital defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  An appropriate Order will accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

10