UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DINA SOLIMAN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1137 (RJL) |
| | ) | |
| GEORGE WASHINGTON UNIVERSITY, *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER
(August __6__, 2010) [# 54]

The plaintiff, Dr. Dina Soliman ("plaintiff" or "Soliman"), was employed as a doctor and faculty member of the George Washington University medical school. Soliman ultimately resigned and brought this lawsuit against a number of defendants, including George Washington University ("GWU"), District Hospital Partners, L.P, United Health Services of DC, Inc., and Richard B. Becker, M.D. ("the Hospital defendants"), and a bevy of her former colleagues, Dr. Michael Berrigan ("Berrigan"), Dr. Paul Dangerfield ("Dangerfield"), Dr. Jason Sankar ("Sankar"), and Dr. Ronald Guritzky ("Guritzky") (collectively, "the MFA physician defendants"). The MFA physician defendants now move for complete dismissal of the complaint against them. After careful consideration of the pleadings, the relevant law, and the entire record herein, the Court GRANTS defendants' motion.

## BACKGROUND

The events leading up to this suit are recounted at length in my earlier opinion in this case, and thus only warrant the following summary statements. *See Soliman v. George Washington University*, 658 F. Supp. 2d 98 (D.D.C. 2009). Soliman's claims arise from her employment as a cardiothoracic anesthesiologist at George Washington University Hospital, where the MFA physician defendants were Soliman's colleagues.[1] Specifically, with respect to the MFA physician defendants, Soliman complains that while her application to rejoin the "Heart Team" was pending, Sankar and Dangerfield spread rumors about her personal life (Am. Compl. ¶ 22) and about her professional performance (*Id.* ¶29), and publicly reprimanded her to discredit her in front of hospital staff (*Id.* ¶34). In addition, she complains that they, along with Guritzky, regularly assigned her to work alone, denying her the opportunity to work with residents, which was a more prestigious assignment. *Id.* ¶¶24-25; 54-55. Soliman claims that Berrigan, who was the chair of the department at the time, failed to respond to Soliman's reports of discrimination and abusive behavior. *See, e.g., id.* ¶¶ 27, 32, 38, 39, 45, 46, 50, 51, 57, 60-64. According to Soliman, Berrigan and Dangerfield also "falsely criticized" her performance to at least one other hospital where Soliman had applied for a position. *Id.* ¶¶ 75, 95.

---

[1] Berrigan is a professor of anesthesiology and is chairman of the department of anesthesiology and critical care medicine. Am. Compl. ¶10. Dangerfield is an assistant professor of anesthesiology and the director of clinical anesthesia. *Id.* ¶11. Sankar is an assistant professor of anesthesiology and the director of cardiac anesthesia education. *Id.* ¶12. Guritzky is an assistant professor of anesthesiology and the director of student clerkship. *Id.* ¶13.

Soliman also alleges that Berrigan and Guritzky falsely blamed Soliman for the death of a patient, an accusation which led to the summary suspension of her hospital privileges in violation of the procedures prescribed by the hospital's bylaws. *Id.* ¶¶77-78; 80-81. She claims that Berrigan, Dangerfield, and Guritzky, along with the other defendants, failed to provide Soliman "with a formal, recorded hearing, the right to legal representation, the right to testify on her own behalf, and the right to present witnesses and rely on documentary evidence at the hearing." *Id.* ¶81. Instead, Soliman was subject to an ad hoc review committee meeting, in which Berrigan participated as a witness. *Id.* ¶84. The ad hoc committee reinstated Soliman's privileges but subjected her to a six-week peer review, which exceeded the committee's authority under the bylaws. *Id.* ¶86, 88. Over Soliman's objection, Guritzky performed the peer review. *Id.* ¶¶93-94.

In total, Soliman alleged four counts in her Complaint. This Court previously dismissed Counts II and III, which alleged gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.*, and the D.C. Human Rights Act, D.C. Code §§ 2-1401.01 *et seq. Soliman*, 658 F. Supp. 2d. at 103. Because I concluded that aiding and abetting claims could not survive when the underlying claims had been dismissed, I also dismissed Count IV as to all defendants but the MFA physician defendants, who had not moved to do so at that time. *Id.* In addition, many of the claims underlying Count I, which alleged tortious interference with business relations, were also dismissed. *Id.* at 103-4. The sole remaining claim under Count I alleges the defendants failed to comply with their bylaws. *Id.*

3

## ANALYSIS

A court may dismiss all or part of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In evaluating a Rule 12(b)(6) motion, the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). But, the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although the factual allegations need not be detailed, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted). Factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Id.*

As discussed above, all but one of the original Count I allegations of tortious interference with business relations have been dismissed as to the Hospital defendants. Those claims were dismissed because Soliman failed to plead enough to establish the

4

plausibility of showing the necessary intent. *Soliman*, 658 F. Supp. 2d. at 103-04. For those same reasons, the Court hereby dismisses those Count I claims against the MFA physician defendants.

The remaining claim—defendants' misuse of their bylaws—was not previously dismissed against the Hospital defendants due to the very low pleading requirement necessary to sustain such a claim. *Id.* at 104 (citing *Canady v. Providence Hosp.*, 942 F. Supp. 11, 18 (D.D.C. 1996)). The MFA physician defendants now argue, however, that the misuse of bylaws claim should be dismissed against them because this claim, on its face, is not actually asserted against them. Indeed, they claim that they are not alleged to have issued or adopted any bylaws, or to be responsible for implementing or adhering to the bylaws. Def.'s Mot. 12. To the contrary, the MFA physician defendants are alleged to have participated in the expedited hearing and peer review that Soliman claims occurred in violation of the rights afforded to her by the hospital's bylaws. Thus, the MFA physician defendants argue that the sole basis for plaintiff's claim against them arises instead from her conclusory allegations that their participation in her hearing circumvented the process established by the bylaws, which is insufficient to survive a motion to dismiss. I agree. While the plaintiff has successfully alleged that the *Hospital* defendants failed to afford her the protections due to her under the bylaws, she has not alleged that the *MFA physician* defendants, merely by taking part in the process as a witness and peer reviewer, have done the same. Accordingly, Soliman's claim against the MFA physician defendants for misuse of their bylaws is dismissed.

Finally, my reasons for dismissing Count IV against the Hospital defendants apply equally to the MFA physician defendants. Accordingly, Count IV as applied to the MFA physician defendants must also be dismissed.

**CONCLUSION**

Thus, for these reasons, the MFA physician defendants' Motion to Dismiss is GRANTED. It is hereby

**ORDERED** that the Motion to Dismiss is GRANTED, and the MFA physician defendants are dismissed from this action.

**SO ORDERED**.

RICHARD J. LEON
United States District Judge